UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

SHAMAR ESQUILIN,

                       Plaintiff,

              -v-

DORA SCHRIRO, COMMISSIONER, et al.,

                  Defendants.

------------------------------------------------------------------ X

                     13-cv-3724 (KBF)

                    OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 1 9 2014

KATHERINE B. FORREST, District Judge:

    Pro se plaintiff Shamar Esquilin[1] commenced this action, on or about May 30,

2013,[2] for alleged violations of his federal and New York state constitutional rights

while he was incarcerated at a New York City Department of Correction ("DOC")

facility on Rikers Island. (See Compl. at 1, ECF No. 1.) Plaintiff brings this action

against defendants DOC Commissioner Dora Schriro, an unidentified "John Doe"

DOC Captain, and DOC Officers Kevin Reynolds, Ruben Hernandez, and Delia Hill-

Grant (the "DOC Officer Defendants"), and seeks injunctive relief and money

damages. (Id. at 4-5.)

    This action was transferred to the undersigned on August 22, 2013. On

November 14, 2013, defendants moved to dismiss the complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6). (ECF No. 49.) Plaintiff opposed the motion on

---

[1] Though this action was originally brought by Esquilin as well as four other named plaintiffs, the
other plaintiffs were dismissed from this action on August 16, 2013 and October 8, 2013. (ECF Nos.
15, 17, 19, 20, 40.)
[2] The Court notes that the complaint itself—which is titled "Notice of Intention to File a Claim"—
bears the date December 15, 2012. (Compl. at 5, ECF No. 1.)

December 21, 2013, and defendants filed their reply in further support of their motion to dismiss on January 9, 2014.  (ECF Nos. 55-57.)

For the reasons set forth below, defendants' motion to dismiss is GRANTED and this action is dismissed, subject to the Court's instructions below.

## I.   FACTUAL ALLEGATIONS

Plaintiff alleges that, on December 14, 2012, at approximately 3:50 p.m., in a housing unit at Otis Bantum Correctional Center ("OBCC"), the DOC Officer Defendants, supervised by the John Doe DOC Captain, conducted a random search of him and other male pretrial detainees.  (Compl. ¶ 1.)

According to plaintiff, during the search, he and the other detainees were ordered to remove their footwear and placed their bare feet on the floor of the housing unit.  (Id. ¶ 4.)  Plaintiff alleges that he and the other detainees were thus exposed to "bacteria and germs" and were placed "in a position to possibly contract foot fungus and/or other medical problems."  (Id.)  Plaintiff next alleges that he and the other detainees were ordered to remove their pants and underwear, to turn around, and to squat for a visual body cavity inspection.  (Id. ¶ 5.)  Plaintiff alleges that a "body cavity inspection form" was not completed for the search, and that the search was not recorded on video.  (Id. ¶ 6.)  Plaintiff alleges that these steps were required by DOC policies and procedures.  (Id.)

Plaintiff alleges the DOC Officer Defendants set up portable partitions during the search, but that the partitions were either not set up correctly, were old and worn, or were otherwise inadequate.  (Id. ¶ 2.)  Plaintiff also alleges that female

DOC officers were able to view him and the other male detainees while they were being strip searched.  (Id. ¶ 3.)  Plaintiff alleges that, during the search, he was told by a DOC Officer to "sue us, you are just making my job easier" in response to his complaints about the search.  (Id. ¶ 13.)

Plaintiff also alleges, generally, that he was strip searched in a similar manner when he was in the intake area preparing to go to court at Rikers Island, and that these searches were in "plain view" and conducted without partitions.[3]  (Id. ¶¶ 7-8.)  Plaintiff alleges that, during these searches, he was required to remove his footwear, walk through an x-ray machine, remove his pants and underwear, and to bend over for a visual body cavity inspection.  (Id. ¶ 8.)

Plaintiff alleges that he suffered humiliation and emotional distress as a result of these strip searches.  (Id. ¶ 15.)

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id.

---

[3] Plaintiff does not allege either the number or dates of these searches.

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citations and internal quotation marks omitted). Accordingly, the Court "liberally construe[s] pleadings and briefs submitted by pro se litigants . . . reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007). However, even a pro se complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see Fuentes v. Tilles, 376 F. App'x 91, 92 (2d. Cir. 2010) (affirming district court's dismissal of pro se complaint for failure to state a claim).

III.    DISCUSSION

Based on the allegedly unconstitutional strip search procedures set forth above, plaintiff seeks damages for violations of his Fourth, Fifth, Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, as well as for violations of the New York State Constitution.[4]  (Compl. at 1, ¶ 16.)  Plaintiff also seeks injunctive relief to require the DOC to change its strip search policy and to properly train its personnel.  (Id. ¶ 15.)

Plaintiff's § 1983 claims, the basis for federal subject matter jurisdiction over this action, fail for several reasons: (A) plaintiff lacks standing to seek injunctive relief; (B) the search to which plaintiff alleges he was subjected has been upheld as

---

[4] In his opposition, plaintiff also references a purported violation of the First Amendment and Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.  (Opp. at 1, 5, ECF No. 56.)  No such claims are asserted in the complaint itself.  The Court discusses these potential new claims further in Section IV, infra, concerning leave to amend the complaint under Rule 15(a)(2).

4

constitutional; (C) plaintiff's failure to exhaust his administrative remedies is evident from the face of the complaint; and (D) plaintiff has failed to allege any personal involvement by defendant Schriro. The Court thus dismisses plaintiff's federal claims and declines to exercise supplemental jurisdiction over his New York state law claims.

      A.    Lack of Standing for Injunctive Relief

"In order to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) (citation and internal quotation marks omitted). "In doing this, he cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." Id. (citation and internal quotation marks omitted); see also O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

Plaintiff's claims for injunctive relief must fail, because plaintiff is no longer in DOC custody. On or about October 10, 2013, plaintiff advised the Court that he had been transferred to Downstate Correctional Facility to serve the remainder of his sentence. (ECF No. 43.) On or about November 4, 2013, plaintiff advised the Court that he had been transferred to Altona Correctional Facility, where he is currently incarcerated. (ECF No. 47.) Both facilities are New York State

Department of Corrections facilities and are not operated by DOC. (Garman Decl. ¶ 4, ECF No. 51.)[5]  In his opposition, plaintiff concedes that he is no longer in DOC custody and that his request for injunctive relief is "moot," though he "still requests this Court to rule on this issue." (Opp. at 2.)  The Court declines to issue such a ruling because no case or controversy with respect to plaintiff's request for injunctive relief remains. See O'Shea, 414 U.S. at 495-96; Shain, 356 F.3d at 215.

B.     Constitutionality of Strip Searches

Liberally construed, the complaint alleges constitutional violations for the strip searches described above under the Fourth and Fourteenth Amendments.[6] (See Compl. at 1, ¶¶ 9-12, 15.) This claim fails as a matter of law in light of binding Supreme Court precedent.

In the context of a correctional facility, "a regulation impinging on [a prisoner's] constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" Florence v. Bd. of Chosen Freeholders of Burlington, 132 S. Ct. 1510, 1515 (2012) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The Supreme Court has explained that "the Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees," because "[a] detention facility is a unique place fraught with serious security dangers"—"[s]muggling of money, drugs,

---

[5] The Court further notes that, according to the New York State Department of Corrections website, plaintiff was released on parole on February 13, 2014.

[6] The Court construes plaintiff's "cruel and unusual punishment" claim as brought under the Due Process Clause of the Fourteenth Amendment, because plaintiff is a state pretrial detainee. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The applicable standard for this claim, however, is identical to that applicable to a claim brought by a convicted inmate under the Eighth Amendment. Id. at 72.

weapons, and other contraband is all too common an occurrence." <u>Bell v. Wolfish</u>, 441 U.S. 520, 540, 559 (1979). Further, "[t]he task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials." <u>Florence</u>, 132 S. Ct. at 1517 (internal quotation marks omitted) (citing <u>Bell</u>, 441 U.S. at 546, 548). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." <u>Florence</u>, 132 S. Ct. at 1517 (internal quotation marks omitted) (citing <u>Block v. Rutherford</u>, 468 U.S. 576, 584-85 (1984)).

Here, plaintiff alleges that he was subjected to random, visual body-cavity inspections in the OBCC housing area and upon leaving the facility to go to court. Nearly identical searches have been upheld as constitutional under both the Fourth and Fourteenth Amendment by the Supreme Court and the Second Circuit.[7] Similarly, post-<u>Florence</u> courts in this Circuit have found that visual body-cavity searches of pretrial detainees pass constitutional muster.[8]

---

[7] <u>See</u> <u>Florence</u>, 132 S. Ct. at 1514, 1518, 1523 (upholding under Fourth and Fourteenth Amendments policy of conducting visual body-cavity inspections of all pretrial detainees, even those accused of minor offenses, as part of routine intake process before detainees enter the general population); <u>Bell</u>, 441 U.S. at 558-61 (upholding under Fourth and Fifth Amendments policy requiring all inmates, including pretrial detains, "expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution"); <u>Covino v. Patrissi</u>, 967 F.2d 73, 75, 77-80 (2d Cir. 1992) (upholding under Fourth and Fourteenth Amendments policy of random, visual, body-cavity inspections of all inmates, including pretrial detainees).

[8] <u>See, e.g.</u>, <u>Glassman v. City of New York</u>, No. 13-593-cv, 2014 WL 815162, at *1 (2d Cir. Mar. 1, 2014); <u>Manley v. Ramos</u>, No. 13 Civ. 2662 (TPG), 2014 WL 1496094, at *1-2 (S.D.N.Y. Apr. 16, 2014); <u>Vaughn v. Strickland</u>, No. 12 Civ. 2696 (JPO) et al., 2013 WL 3481413, at *3-7 (S.D.N.Y. July 11, 2013); <u>Paulin v. Figlia</u>, 916 F. Supp. 2d 524, 532-533 (S.D.N.Y. 2013); <u>Myers v. City of New York</u>, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012). <u>But see</u> <u>George v. City of New York</u>, No. 12 Civ. 6365 (PKC) (JLC) et al., 2013 WL 5943206, at *8 (Nov. 6, 2013) (denying motion to dismiss in light of plaintiff's specific, credible allegations that strip search was conducted to "make a spectacle of [the inmates] for the new recruits" and to publically humiliate the plaintiffs").

Even assuming, as the Court must, the truth of plaintiff's allegations concerning the strip searches to which he was subjected, they do not rise to the level of a constitutional violation—particularly in light of the Supreme Court's decision in Florence. At most, plaintiff alleges that the partitions used during the searches were insufficient and his bare feet were exposed to the floor of the housing unit[9]; in doing so, plaintiff concedes that he was afforded some privacy during these searches.[10] Plaintiff does not allege any facts to suggest that the searches to which he was subjected were an "exaggerated response" to legitimate penological concerns regarding security and discipline. See Florence, 132 S. Ct. at 1517; Block, 468 U.S. at 584-85. In fact, plaintiff does not address the impact of the Supreme Court's Florence decision in his opposition; rather, he relies exclusively on pre-Florence, out-of-Circuit cases. (See Opp. at 2-6, ECF No. 56.) In sum, plaintiff's § 1983 claims based on the visual body-cavity searches alleged in the complaint fail as a matter of law.

      C.    <u>Failure to Exhaust Administrative Remedies</u>

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'"

---

[9] Plaintiff does not allege that he suffered any medical consequences as a result.
[10] Plaintiff's allegation that better partitions should have been used during the searches appears to be inconsistent with his assertion that the searches should have been recorded on video.

Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).  Where a plaintiff's failure to exhaust his or her administrative remedies under the PLRA appears on the face of the complaint, dismissal is warranted at the pleading stage.  See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998).

Here, the complaint contains no allegations whatsoever as to the filing of a single grievance, let alone exhaustion of the applicable DOC grievance process. Liberally construed, plaintiff alleges that he "protested" against one of the strip searches to a DOC officer.  (See Compl. ¶ 13.)  Yet, "[a]lerting the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion" under the PLRA.  Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (alterations, internal quotation marks, and citations omitted).  Plaintiff fails to allege any facts concerning his exhaustion of the DOC's grievance process in either the complaint or his opposition; perhaps conceding that he did not file any such grievances, he instead argues that exhaustion would have been futile.  (See Opp. at 6.)  The PLRA exhaustion requirement, however, does not have a futility exception. See Gill v. INS, 420 F.3d 82, 87 n.9 (2d Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 740-41 (2001)).  Accordingly, plaintiff's § 1983 claims are also dismissed for failure to exhaust administrative remedies under the PLRA.

D.    Personal Involvement of Defendant Schriro

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's

personal involvement in the alleged constitutional deprivation." Grullon v. City of

New Haven, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). According to the

Grullon court:

> [P]ersonal involvement of a supervisory defendant may be shown by
> evidence that: (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed of the
> violation through a report or appeal, failed to remedy the wrong, (3)
> the defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by failing to
> act on information indicating that unconstitutional acts were
> occurring.

Id. at 139 (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).[11] That an

individual held a high position of authority does not, by itself, suffice to implicate

his or her personal involvement for purposes of a suit under § 1983. Black v.

Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); Wright, 21 F.3d at 501.

Even assuming plaintiff had adequately plead an underlying constitutional

violation, which he has not, the complaint fails to allege facts sufficient to state a §

1983 claim against defendant Schriro. In fact, the complaint contains no factual

allegations whatsoever as to Schriro; beyond the caption itself, her name does not

appear in the complaint. See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.

1987). Plaintiff's argument in his opposition that the complaint sufficiently alleges

---

[11] The Second Circuit has noted that the Supreme Court's decision in Iqbal "may have heightened
the requirements for showing a supervisor's personal involvement with respect to certain
constitutional violations." Grullon, 720 F.3d at 139. Like the Grullon court, see id., however, this
Court also need not reach the impact of Iqbal on these standards because the complaint fails to
adequately plead personal involvement by defendant Schriro under Colon for the reasons set forth
herein.

10

Schriro's personal involvement merely because she creates and enforces the DOC's policies and procedures is conclusory and insufficient. See Iqbal, 556 U.S. at 676 (holding that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, plaintiff's § 1983 claims against Schriro are also dismissed for failure to adequate allege personal involvement.

IV.  LEAVE TO AMEND

At the end of his opposition, plaintiff requests permission to file an amended complaint should the Court decide to grant defendants' motion to dismiss. (See Opp. at 9.)

Rule 15(a)(2) provides that leave to amend "should be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). A "court should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Nonetheless, "a futile request to replead should be denied." Id.

11

"[I]t is within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

In light of the deficiencies identified herein, the Court finds that granting leave to amend is likely futile. Even if plaintiff were to plead sufficient facts concerning PLRA exhaustion and the personal involvement of defendant Schriro, which he would need to do in order to avoid dismissal on these grounds, his § 1983 claims themselves—based on the unconstitutionality of the strip searches to which he was subjected—fail as a matter of law. With respect to plaintiff's potential new claims—under the First Amendment and the RLUIPA, plaintiff states in his opposition that he is a member of the Nation of Gods and Earth faith and that his faith requires that he not "show his nakedness to strangers." (See Opp. at 3.) Even assuming this is sufficient to allege a substantial burden on his sincerely held religious beliefs, defendants are easily able to allege "legitimate penological interests that justify the impinging conduct" in light of Florence and Bell; plaintiff would then need to allege facts showing that such concerns were "irrational." See Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006). The Court does not expect plaintiff to be able to do so.

Nevertheless, because plaintiff has not previously amended his complaint, the Court will permit plaintiff to write a letter to the Court, by **July 20, 2014,** setting forth any additional factual allegations that he believes will cure these deficiencies and that he would include in an amended complaint. If the Court receives such a timely letter, the Court will construe it as a motion for leave to

12

amend under Rule 15(a)(2), and will either rule on that motion or direct defendants to respond.  If the Court does not receive such a letter by July 20, 2014, this action will remain closed.

V.    CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) is GRANTED.  Plaintiff may write the Court a letter as described above by **July 20, 2014**.

The Clerk of Court is directed to close the motion at ECF No. 49, and to close this action.

SO ORDERED.

Dated:      New York, New York
            June 19, 2014

_____
KATHERINE B. FORREST
United States District Judge

Copy to:

Shamar Esquilin
07-A-2872
Altona Correctional Facility
555 Devils Den Road
P.O. Box 3000
Altona, NY 12910